The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Wanda Blanche Taylor and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the prior Opinion and Award. However, pursuant to its authority under G.S. § 97-85, the Full Commission has modified the prior decision regarding plaintiff's permanent partial disability rating and the award of attorney's fees under G.S. § 97-88.
 *************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21, approved by the Commission on June 18, 1994, in Industrial Commission Forms 26, approved by the Commission on August 10, 1994 and October 14, 1994, in a Pre-Trial Order, at and after the hearing on May 2, 1996 as:
 STIPULATIONS
1. On April 11, 1994, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On April 11, 1994, an employment relationship existed between plaintiff and defendant-employer.
3. Chubb Insurance Group Company was the carrier on the risk for defendant-employer at all relevant times.
4. Plaintiff received temporary total disability benefits from April 12, 1994 through May 19, 1994. He returned to work on May 16 and May 19, 1994. He received temporary total disability benefits for May 17 and May 18, 1994 and for the period May 20, 1994 through July 24, 1994. Plaintiff received temporary partial disability benefits from July 25, 1994 through October 2, 1994. He again received temporary total disability benefits from October 3, 1994 through January 8, 1995 and then temporary partial disability benefits from January 8, 1995 through January 17, 1995. Plaintiff returned to work at full duty on January 18, 1995 and worked full duty until April 6, 1995.
 ************* RULINGS ON EVIDENTIARY MATTERS
All objections raised during the depositions of Dr. Jones and Dr. Kroll are ruled upon in accordance with the law and Opinion and Award rendered in this matter.
 *************
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On April 11, 1994, plaintiff was a twenty-one year old male who had worked with the defendant-employer for approximately one year. On that date he was working in the shipping and receiving department when a large roll of steel weighing approximately two thousand pounds fell across plaintiff's left foot and ankle barely missing his head and chest and resulting in multiple fractures of plaintiff's left foot and ankle.
2. Plaintiff was taken to Park Ridge Hospital Emergency Room on April 11, 1994. He presented with a crush injury to his foot, with a bimalleolar fracture (a fracture on both the inside and outside portion of his ankle) with multiple fractures in his foot, including the navicular, the first cuneiform and the fourth and fifth metatarsals and possible compartment syndrome which results from bleeding into a confined space in the body, limits the egress of the fluid from the high pressure arterial system and causes increasing pressure in the compartment to a point that it first obstructs or blocks off venous drainage from the compartment and then starts blocking off the arterial blood supply to the area and can lead to loss of blood supply and actually lead to loss of the limb. Plaintiff was treated for this condition by Dr. Larry Kroll who performed surgery on plaintiff's left foot and ankle consisting of an open reduction and internal fixation of the malleoli on the inside of the ankle and placement of a malleolar screw to hold the fragment in place. During this surgery, a T-plate with screws was applied to stabilize the outside of the ankle and an open reduction and K-wire fixation of plaintiff's fourth and fifth metatarsal with pins to stabilize the bones was also performed. Dr. Kroll also made additional incisions over plaintiff's foot to open the foot to give room for swelling, bleeding and egress of fluid to prevent necrosis of the muscle tissue.
3. On April 17, 1994, six days after plaintiff's initial surgery, Dr. Kroll performed a skin graft procedure to close the two incisions made in plaintiff's foot at the initial surgery. On April 19, 1994, plaintiff was released from his hospital stay at Park Ridge Hospital on non-weight bearing ambulation.
4. Plaintiff followed up with Dr. Kroll on April 27, 1994 in good condition and was given a new cast. On May 12, 1994, Dr. Kroll indicated that plaintiff should not return to work until May 16, 1994 and from that time through July 1, 1994 should remain on light duty with no weight on his foot. Plaintiff returned on May 18, 1994 to Dr. Kroll for pain, burning, irritation and swelling of his left foot.
5. On May 21, 1994, plaintiff was admitted at Charter Hospital by Dr. Ralph Jones suffering from post-traumatic stress syndrome caused by his compensable April 11, 1994 injury by accident. Plaintiff had been suffering from intrusive recollections and dreams regarding his injury. Plaintiff became afraid to go to sleep and began to avoid his family becoming extremely depressed and withdrawn. He was unresponsive, estranged and irritable with his family. Almost any stimulus provoked flashbacks, panic and rage. Plaintiff was also suffering from suicidal ideation.
6. Plaintiff remained at Charter Hospital from May 21, 1994 through July 1, 1994. From July 1, 1994 until August 11, 1994, plaintiff received therapy in the hospital during days and did not stay overnight. From August 11, 1994 until September 7, 1994, plaintiff was involved in an intensive outpatient program in which he spent approximately twenty hours per week receiving treatment. Plaintiff was released on September 7, 1994.
7. During plaintiff's hospitalization from May 21, 1994 through August 11, 1994, he returned to work part-time light duty while he was receiving treatment. During his admission for psychological problems, plaintiff continued treatments with Dr. Kroll who removed the pins and cast on May 27, 1994. Dr. Kroll advised plaintiff to begin range of motion exercises and to remain on crutches. On June 29, 1994, plaintiff began physical therapy with weight bearing as tolerated and was slowly weaned off crutches. Plaintiff remained on light duty during this period. In August 1994, plaintiff remained in physical therapy but was continuing to experience pain and swelling depending on his activity level. At this time, plaintiff was working approximately four hours per day.
8. On September 15, 1994, plaintiff presented to Dr. Kroll with pain from a screw on the inner side of his left ankle, failure to heal of his fifth metatarsal and necessity for a bone graft at that site. The screw was removed and the bone graft was performed on September 29, 1994.
9. On October 13, 1994, plaintiff was re-admitted to Charter in a suicidal state. At that time, he was approximately two weeks post his third surgery, his wife and children had left him, he had gone off his medications in conjunction with his second surgery and was having trouble renegotiating his return to work at an alternative job with his employer. Plaintiff was an inpatient at Charter from October 13, 1994 through October 26, 1994. Upon his release on October 26, 1994, plaintiff was taking Klonopin, Doxepin, and Trilafon for his depression, along with Zantac and Cogentin for associated side effects.
10. On October 5, 1994, plaintiff had a cast put on his leg after his third surgery. On October 17, 1994, November 9, 1994, November 17, 1994 and November 23, 1994, plaintiff presented to Dr. Kroll complaining of pain but the doctor continued to keep the pins in the plaintiff's foot. During this time plaintiff continued non-weight bearing ambulation. On December 15, 1994, plaintiff's pins were removed and he was put on twenty to thirty pounds weight bearing.
11. On January 3, 1995, the plaintiff visited Dr. Kroll who found that plaintiff's foot was better and that he should discontinue crutches over the next two weeks. On February 16, 1995, the plaintiff was released by Dr. Kroll to return to work with a five percent permanent partial disability of the left foot and ankle. Plaintiff was last seen by Dr. Kroll for his left foot and ankle problems on April 21, 1995.
12. On April 6, 1995, plaintiff took an overdose of his medication which required hospitalization at Memorial Mission Hospital. He then was admitted to Charter Hospital on April 7, 1995. Prior to being admitted on this occasion, plaintiff's wife had obtained a divorce after separating from him in April 1994 shortly after his compensable injury by accident. When plaintiff was admitted to Charter, he was overwhelmed by his marital problems along with the continued trauma from his April 1994 compensable injury by accident. This admission at Charter was from April 7, 1995 through April 17, 1995 on an inpatient basis, and from April 17, 1995 through May 11, 1995 on an outpatient basis. Plaintiff was re-admitted to Charter on May 17, 1995 because he was suicidal. This hospitalization lasted until May 25, 1995 when he was placed on an outpatient status.
13. Plaintiff has not been admitted for psychiatric care since May 25, 1995. Upon his release from Charter at that time, he was marginally able to function but remained preoccupied with his accident and vulnerable to interaction with his wife. At that time, he was still very anxious and depressed.
14. Plaintiff was last seen by Dr. Jones for psychiatric problems on July 2, 1996 at which time plaintiff was on decreased medication and had entirely recovered from his psychiatric problems. Plaintiff was asymptomatic for anxiety and depression at this time and was not experiencing flashbacks or intrusive recollections from his traumatic injury.
15. Plaintiff returned to work with defendant-employer at full duty on June 26, 1995. By July 2, 1996, plaintiff had regained a high level of functioning and had been promoted to supervisor. He was working long hours, including overtime.
16. Prior to his April 11, 1994 compensable injury by accident, plaintiff had no pre-existing psychological problems and no preexisting problems of the left ankle and foot.
17. As a direct and proximate result of his compensable injury by accident on April 11, 1994, plaintiff developed a post-traumatic stress disorder.
18. Although plaintiff had experienced marital problems prior to his injury by accident and was admitted to Charter Hospital in April and May of 1995 because he was suicidal as the result of his divorce and continued trauma from his injury, plaintiff's post-traumatic stress disorder was a significant contributing factor to his disability and admission to Memorial Hospital and Charter Hospital from April 6, 1995 until June 26, 1995, when plaintiff returned to work.
19. Plaintiff was unable from April 6, 1995 through June 25, 1995, as a direct and proximate result of his injury by accident on April 11, 1994 and his ensuing post-traumatic stress disorder, to engage in gainful employment or to earn the wages which he was receiving at the time of his injury at the same or any other employment.
20. Plaintiff has received all the compensation in the form of temporary partial disability and temporary total disability to which he is entitled for the period going up to April 6, 1995.
21. On February 15, 1995, Dr. Kroll assigned a five percent (5%) permanent partial disability rating for plaintiff's left foot and ankle. In his deposition, Dr. Kroll stated that this was a minimal rating based on the circumstances and the extent of plaintiff's injuries. Additionally, as he reviewed this rating at his deposition, Dr. Kroll expressed surprise that it was such a low percentage. No additional ratings from other physicians were received.
22. Based on the circumstances of plaintiff's injury by accident, the extent of his physical injuries and the testimony of Dr. Kroll, the Full Commission does not accept the five percent (5%) rating assigned by Dr. Kroll. With the absence of ratings from other physicians, there is insufficient evidence in the record upon which to base a finding on this issue.
23. This matter was appealed to the Full Commission by defendants and is resulting in the award of benefits to plaintiff.
 *************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On April 11, 1994, plaintiff's average weekly wage was $342.00, yielding a compensation rate of $228.01 per week. N.C.G.S. § 97-2(5).
2. On April 11, 1994, plaintiff sustained an injury by accident to his left ankle and foot which arose out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
3. As a direct and proximate result of plaintiff's work-related injury by accident on April 11, 1994, when plaintiff suffered a crush injury to his left ankle and foot and narrowly escaped being hit in the head and chest, plaintiff developed post-traumatic stress disorder. N.C.G.S. § 97-2(6).
4. As the result of his April 11, 1994 injury by accident and related post traumatic stress disorder, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $228.01 per week for the period of April 6, 1995 through June 25, 1995. N.C.G.S. § 97-29.
5. There is insufficient credible evidence in the record regarding the rating to plaintiff's foot upon which to determine the amount of permanent partial disability rating to which he is entitled. N.C.G.S. § 97-31(14).
6. Defendants shall provide plaintiff medical, surgical, hospital, nursing services, psychological and psychiatric treatment, medicines, sick travel and other treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen his disability. N.C.G.S. § 97-25.
7. As part of the bill of costs, counsel for plaintiff is entitled to an attorney's fee in the amount of $1,200.00 for defending this appeal to the Full Commission. G.S. § 97-88. This fee is in addition to the fee awarded as a percentage of the compensation to which plaintiff is entitled.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay compensation to the plaintiff at the rate of $228.01 per week for the period April 6, 1995 through and including June 25, 1995 for his temporary total disability. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee approved in Paragraph 3.
2. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff.
4. Pursuant to G.S. § 97-88, defendants shall pay an additional attorney's fee of $1,200.00 as part of the bill of costs to counsel for plaintiff for defending this appeal to the Full Commission. This fee is in addition to the fee awarded in paragraph (3).
5. Defendant-employer shall pay the costs associated with this action.
 ************* ORDER
The parties are hereby ORDERED to arrange an independent medical evaluation of plaintiff for the purpose of determining his permanent partial disability rating. This evaluation shall take place within SIXTY DAYS (60) of receipt of this Opinion and Award. If the parties are unable to agree on a physician for this evaluation, the list of candidates shall be submitted to the Full Commission. Once a rating is obtained, the physician's deposition, or the appropriate documents, shall be forwarded to the Full Commission for the entry of an award of permanent partial disability compensation. The remainder of the compensation awarded to plaintiff herein shall be paid forthwith.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER